In the Matter of Proving the Last Will and Testament of BENJAMIN RICHARDSON, Deceased.

In the Matter of the Application of VIOLA J. M. KARAM, Appellant, to Vacate the Decree Admitting to Probate the Will of BENJAMIN RICHARDSON, Deceased, and to Revoke the Letters Testamentary Issued thereunder to WILLIAM T. WASHBURN and Another, Respondents.

*Legatee under a will — ratification of its probate by accepting its benefits — estoppel — vacation for fraud of a decree of a Surrogate's Court.*

A legatee who has received a portion of his legacy under a will cannot thereafter maintain a proceeding to revoke the probate of the will without restoring or offering to restore the sum received.

The probate of a will is in the nature of a proceeding *in rem* and affects the status of the estate, which status, as established by the probate, may be ratified by a person interested, although no jurisdiction was acquired over such person when the will was probated.

The ratification may be effected by a writing solemnly executed or by the accept ance of benefits under the will and proceedings, with full knowledge of all the facts connected therewith.

A person *sui juris*, who is not served in an action which ripens into a judgment, through which the title to real property is affected, may, by accepting the benefits flowing from the judgment, with full knowledge of all the facts, bar himself from the right to vacate the judgment, and an infant not served, by accepting, after he becomes of full age, the benefits of the judgment, with full knowledge of all the facts, may so ratify it as to be estopped from moving to set it aside.

A decree of a Surrogate's Court should not be vacated for fraud unless the facts would justify setting aside a judgment of the Supreme Court, which latter court does not set aside its judgments on that ground unless the fraud is clearly established.

APPEAL by the petitioner, Viola J. M. Karam, from an order of the Surrogate's Court of the county of New York, entered in the office of the clerk of the New York County Surrogate's Court on the 1st day of August, 1894, denying the application of the petitioner to revoke the probate of the will of Benjamin Richardson, deceased, and to revoke the letters testamentary issued thereunder, and dissolving an injunction order previously granted by the court staying and enjoining William T. Washburn and another, as executors of Benjamin Richardson, deceased, from acting as such.

February 20, 1889, Benjamin Richardson died leaving him surviving Joseph B. Richardson, son, Jane Richardson, daughter, and five grandchildren, the children of a deceased daughter, to wit, Ella T. Birdsall, William H. Birdsall, Louis P. Birdsall, Viola J. Birdsall and Philena C. Cooper, only heirs and next of kin of the decedent, who left a paper executed February 25, 1888, purporting to be his last will and testament. On the 27th of February, 1889, the executors mentioned in the will verified and filed in the Surrogate's Court a petition praying that a citation be issued to the persons mentioned in the petition to attend the probate of the will. On the 1st day of March, 1889, a citation was issued which was directed to all of the persons mentioned in the petition, including Viola J. Birdsall, and cited them to attend the probate of the will on March 2, 1889. The citation was not served on any of the persons to whom it was addressed for the reason that on the 28th day of February, 1889, all of them had waived, in writing, the issuance and service of a citation and had consented that the instrument dated February 25,

1888, and purporting to be the will of the decedent, be forthwith admitted to probate.   All of the persons interested were of full age except Viola J. Birdsall, who was born September 20, 1869, and, consequently, on the 28th of February, 1889, was of the age of nineteen years, five months and eight days.   The only provisions contained in the will for the benefit of Viola J. Birdsall are the fifth and sixth clauses.   By the fifth clause she was permitted to reside at No. 514 East One Hundred and Sixteenth street so long as she should wish.   The following is a copy of the sixth clause :

"*Sixth.* I give, devise and bequeath to my executor, William T. Washburn, and to Emma Richardson, wife of my brother Joseph, executrix, and their successors in said office, all the balance of my real estate, wherever located, in trust for the purposes following :

"1. I hereby direct my said executor and executrix to sell all real estate from time to time as the same can be sold to advantage, and of the avails thereof to pay my just debts, all the incumbrances upon said real estate, and all the legacies herein given, and after all said debts, incumbrances and legacies are paid to pay the balance remaining to such of my children as may be living at the time of my decease, and the share of such of my children as now are or as may at the time of my decease be dead to their children in such proportion or share as the law would give them if I die intestate."

Viola J. Birdsall became twenty-one years of age September 20, 1890, and continued to occupy No. 514 East One Hundred and Sixteenth street until March, 1893, when she married and became Viola J. M. Karam.   On the 9th of February, 1894, three years, four months and nineteen days after having reached her majority, she verified the petition by which this proceeding was instituted.

*Rastus S. Ransom,* for the appellant.

*Robert H. McGrath,* for the respondents.

FOLLETT, J.:

The learned counsel for the appellant asserts in his brief that this proceeding is not for the revocation of the probate of the will under section 2647 of the Code of Civil Procedure, but is a proceeding " to vacate and open the decree under section 2481 of the Code of Civil Procedure, subdivision 6," which provides :

" Sec. 2481. A surrogate, in court or out of court, as the case requires, has power :    *    *    *

" 6. To open, vacate, modify or set aside, or to enter, as of a former time, a decree or order of his court ; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error or other sufficient cause.   The powers conferred by this subdivision must be exercised only in a like case and in the same manner as a court of record and of general jurisdiction exercises the same powers. Upon an appeal from a determination of the surrogate, made upon an application pursuant to this subdivision, the General Term of the Supreme Court has the same power as the surrogate, and his determination must be reviewed as if an original application was made to that term."

The sole ground on which the plaintiff seeks to revoke the probate of the will is that the Surrogate's Court acquired no jurisdiction over her in the proceedings to probate the will.   This proposition is predicated on four undisputed facts :  (1) That when the will was probated, March 2, 1889, she was but nineteen years, five months and twelve days old ; (2) that February 28, 1889, when she waived service of a citation to attend the probate, none had been issued ; (3) that no citation to attend the probate was ever served on her ; (4) that the surrogate failed to appoint a competent and responsible person to appear as special guardian for her in the proceeding to probate the will.

Apart from the question whether the Surrogate's Court on March 2, 1889, had acquired jurisdiction of the plaintiff, we think that the decree should be affirmed because of the action and non-action of the plaintiff during three years, four months and nineteen days between the time she became of full age, and the date when she began these proceedings.   During this period she accepted benefits under the probated will, none of which has she offered to restore, and some of which she cannot restore.   The testator died February 20, 1889, and the plaintiff became of full age September 20, 1890. Pursuant to the fifth clause of the will, she occupied a dwelling from the testator's death to March, 1893, when she was married — during a period of more than four years, two and one-half of these years being after she became twenty-one years of age.   Before she became of full age she received from the executors $165 in cash,

and after she became of age she received from them $260 in cash, and in addition has received since August 3, 1892, one-fourth of the net rent from four houses, her share amounting to more than twenty dollars per month. An action was brought against the executors and devisees by a woman who asserted that she was the widow of the testator to recover her alleged dower right, which the appellant and the other defendants therein settled on the 11th of February, 1891, by giving their bond for the payment of $50,000 one year from date, secured by three mortgages, executed by the executors and devisees on the real estate left by the testator. The executors paid $15,000 of this sum, and the remainder — $35,000 — was borrowed February 18, 1892, on the bond of the executors and devisees, secured by three mortgages, executed by them. This plaintiff was a party defendant in that suit, participated in its settlement and executed the two bonds and mortgages given for their security. In 1893 she began proceedings in the Surrogate's Court. which are still pending, to compel the executors to account. From the death of the testator to this date the plaintiff has resided in the city of New York, has had personal knowledge of the will, of the proceedings taken to probate it and of the transactions of the executors and devisees thereunder, and has joined in such transactions. She does not assert that she was ignorant of any fact on which she bases her present application, but only that she was ignorant of the law applicable to those facts. She does not disclose why she desires the probate revoked. It is not alleged that the will is, for any reason, void, or even that she desires to contest its probate on any ground. In short, she discloses no merits.

In *The Matter of Peaslee* (73 Hun, 113) this General Term held that a legatee who has received a portion of a legacy cannot maintain a proceeding to revoke the probate of the will without restoring, or offering to restore, the sum received. The cases supporting this proposition, and they are numerous, are cited in the opinion and need not be here referred to. It is said that the case last cited is not an authority for the position that the appellant is estopped, because in that case the petitioner, an adult, was a party to the proceeding to probate the will and the Surrogate's Court acquired jurisdiction over her. However the fact may be, the report of the case shows that the decision was not placed on that ground, but

upon the ground that a person, by accepting benefits under a probated will, is estopped from seeking to revoke its probate. Persons may estop themselves from questioning void judgments, decrees, acts and contracts — for example, a forged signature to a contract — provided they are not void as against public policy. The probate of a will is in the nature of a proceeding *in rem* and affects the status of the estate, which status, as established by the probate, may be ratified by a person interested, though no jurisdiction was acquired over such person when the will was probated. This ratification may be effected by a writing, solemnly executed, or by the acceptance of benefits under the will and proceedings, with full knowledge of all the facts connected therewith. The latter is what the appellant has done. A person *sui juris*, who is not served in an action which ripens into a judgment, through which the title to real property is affected, may, by accepting the benefits flowing from the judgment, with full knowledge of all the facts, bar himself from the right to vacate the judgment, and so an infant not served, by accepting, after he becomes of full age, the benefits of the judgment with full knowledge of all the facts, may so ratify it as to be estopped from moving to set it aside.

It will be observed that the section under which this proceeding was instituted provides : " The powers conferred by this subdivision must be exercised only in a like case and in the same manner as a court of record and of general jurisdiction exercises the same powers."

A decree of a Surrogate's Court should not be vacated for fraud unless the facts would justify setting aside a judgment of the Supreme Court, which does not set aside its judgments on that ground unless the fraud is clearly established. (*Smith* v. *Nelson,* 62 N. Y. 286 ; *Kinnier* v. *Kinnier,* 45 id. 535.)

The section of the Code under which this proceeding is prosecuted provides : " Upon an appeal from a determination of the surrogate, made upon an application pursuant to this subdivision, the General Term of the Supreme Court has the same power as the surrogate, and his determination must be reviewed as if an original application was made to that term."

The undisputed facts in the record refute the appellant's allegation that a fraud was practiced upon her or on the Surrogate's Court in the proceeding to probate the will, and if the evidence produced

by both sides · is weighed, that furnished by the executors greatly outweighs that which was given by the appellant.

The decree should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Decree affirmed, with costs.